(Hamilton County Common Pleas.)

CIGAR MAKERS INTERNATIONAL UNION OF AMERICA v. JACOB BURKHARDT, ANNA BURKHARDT and FRED LINDEMANN.

*Label—Trade-mark—*

(1). Any imitation which may or can produce upon the mind of the purchaser of ordinary caution the impression and belief that the imitating label is that of a trade-mark owner, with whose goods he is familiar, will constitute an infringement.

(2). As labels are arbitrarily adopted for the sole purpose of indicating origin or ownership only, the rule is more strictly followed and less latitude allowed to imitations.

(Decided March, 1898.)

---

JELKE, J.

The petition alleges, and on the hearing it was admitted, that the plaintiff, the Cigar Makers' International Union of America, is an association of working men and working women; that its main office is in the city of Chicago, in the state of Illinois and that it has local or branch unions in Cincinnati and Columbus and other cities of the state of Ohio; that under and in pursuance of the provisions of an act of the legislature of the state of Ohio, passed March 30th, 1892, O. L., 87, p. 166, Bates R. S., 3464-49, said plaintiff adopted a label intending to designate the products of the labor of the members of the Cigar Makers' International Union of American, and filed duplicate copies of such label with the Secretary of State of the state of Ohio on April 11th, 1894, and received from said Secretary of State a certified copy of the filing of

the same, which said label is as follows:

Except that the factory stamp upon said label in red letters constitutes no part of said label, and that said plaintiff and the members of the said the Cigar Makers' International Union of America have ever since said date and do now label the cigars manufactured by them with said label.

I find a very interesting and instructive essay on the origin of this label, and the principles underlying its adoption by M. E. J. Kelley in the North American Review for the month of July, 1897, p. 26. From the testimony it appears that the defendant, Anna Burkhardt, owns and runs a small cigar manufacturing business, and that the defendants, Jacob Burkhardt and Fred Lindemann, are in her employ. Jacob Burkhardt is her husband. Jacob Burkhardt was for many years a member of the Cigar Makers' International Union of America, but for reasons satisfactory to him and it, he some years ago severed his connection with the union.

He testifies that since then he has gathered together a body of from ten to fifteen veterans of our civil war and formed them into an association which meets about once a month at his house. This association is not incorporated, and has no connection with his business, other than to buy his, or rather, Mrs. Burkhardt's cigars.

He says that Mrs. Burkhardt, in order to identify her cigars to her husbands' comrades and to veterans generally, has adopted the following label:

The factory stamp is no part of said label, but it is customarily placed in the same place by defendants as it is placed on the union label.

Mr. Burkhardt testifies that they made the label blue because that was the color of the coats and "pants" worn by them in the army. Bates R. S., 4364-50, (sec. 2, of act of 1892) provides: "Every union or association of working men or women adopting such label mark, name, brand or device, and filing the same as specified in the first section of this act, may proceed by suit in any of the courts of record in the state to enjoin the manfacture, use display on sale of counterfeits cr colcrable imitations of such label, mark, name, brand or device, cr of goods bearing the same; etc., etc., etc., etc."

Plaintiff claims that the label adopted by defendants is a "colorable imitation" of its label, and prays that defendants be perpetually enjoined from using the same. Defendants have never registered their label.

Defendants claim that their label differs sufficiently not to be an infringement, and that it is not a "colorable imitation", and on this question the case is submitted. Laying these labels side by side by careful comparison, I find them similar in the following particulars:

1. Kind of paper. 2. Color. 3. Size. 4. Shape. 5. Location of date. 6. In having border. 7. In kind of border. 8. Circular seal. 9. Rising sun. 10. Eagle. 11. Shield. 12. Inscription cn seal 13. Name—Cigar Makers Veteran Union of America. 14. Place for local stamp. 15. Arrangement of printed matter. 16. Substance and statements of printed matter. 17. Black letter beginning of certificate. 18. Kinds of type used in same places. 19. Script signature. 20. Designation of signer.

These labels are likewise different in each of the foregoing particulars. They differ as widely as the distance between similarity and identiy. In their tout ensemble the labels are strikingly similar.

Defendants rely upon the case of Brill v. Singer Manufacturing Company, 41 Ohio St., 127; and especially

this part of the opinion per Dickman, J., on page 140: "How far the similarity is likely to deceive, must be determined, not by the impression made upcn a heedless and inobservant buyer, but upon one of at least ordinary intelligence and observation. To entitle a complainant to relief against a colorable imitation of a trade-mark, he must clearly show not only a property right in himself, but also that the resemblance between the original and the imitation is such as would mislead persons purchasing with ordinary caution."

Very little of that case is an authority in the case at bar, nct being "a label case but rather having to dc with the goods themselves.

The court found in that case that the name Singer had ceased to have a significance of "origin or ownership" only, but had acquired a qualitative signification also, and to that extent was a generic word indicating machines constructed on certain principles and according to a particular mechanism which owing to the expiration of patents had become common property to the world.

Plaintiffs in the case at bar are not seeking to maintain a trade-mark in any particular kind, quality, size, form, shape or style of cigar; it is purely a case of label, and as a label is arbitrarily adopted for the sole purpose of indicating origin or cwnership only, the rule is more strictly followed and less latitude allowed to imitations.

Of ccurse, a particular color or a piece of paper of certain size or shape cannot be made a valid trade-mark, but the combinaticn and arrangement of matter and qualities here presented by plaintiff certainly constitute a valid trade-mark. Furthermore, plaintiff's label has been admitted to registry by the secretary of state as a trade-mark.

Adopting and following the rule laid down in Brill v. Singer Mfg. Co., supra, I am cf opinion, that defendants' label is a colorable imitation of plaintiffs', and contrary to law.

Each case must however depend upon its own particular circumstances. No man, the most extraordinarily

cautious, buys a cigar with the same pains-taking care he does a sewing-machine.

Men of ordinary habits of observation, do not read the fine print on a box of matches, on the wrapper on a cake of soap, or on the labels on a box out of which they are picking a cigar.

The general rule applicable to the imitation of labels is, that any such imitation as may or can produce upon the mind of the purchaser of ordinary caution the impression and belief that the imitating label is that of a trade-mark owner, with whose goods he is familiar, will constitute an infringement. It is unbelievable for defendants to say that their label was not gotten up in imitation of plaintiffs'.

It would be as idle to say that such similarity was without design, as to say that the Greek alphabet could fall out of a dice-box in order to compose the Iliad.

If such imitative design were present, it was not honest.

The artful differences convict defendants of deliberate bad faith.

These differences show the old desire to violate the spirit and yet keep within the letter of the law.

I am therefore of opinion that defendants' label is an intentionally dishonest colorable imitation.

It is no defense to say that a reading of the label would reveal the truth. In the Official Gazette U. S. Patent Office, vol. 18, July-December, 1880, page 1277, Blodgett, J., said: "In regard to the last point made that by reason of the defendants using their own name upon the wrapper or envelope, the public are not deceived, it would perhaps be enough to say, that when goods acquire a specific name, the purchaser rarely looks to see who has manufactured the goods by that name, as for instance, if as a matter of fact, these needles have acquired among the trade or among consumers or users the designation 'Parabola' that the purchaser would simply ask for 'Parabola' needles, he might be supplied with 'Parabolia' needles, made by Clark & Sons, instead of those manufactured by the complain-

ant, to the direct injury of the complainant, and the abridging of his trade." The argument of the learned court is equally applicable to "blue label cigars."

The coupling of a pirated trade-mark with one's own name has been held to be an aggravation rather than a justification. Having come to this conclusion under the law, I am moved in the same direction by my sentiments of love and veneration for the old soldiers. It is a fair and dignified business method for Burkhardt to bid for the patronage of the veterans, and it is beautiful and praiseworthy in the veterans to remember their comrade in purchasing their cigars, and to facilitate this end it is proper to adopt a label which will certainly identify the goods, but as this is commendable let it be done in a brave above-board manner, and by a label which is unmistakable and above suspicion of taint of unworthy motive.

Furthermore I am afraid that on account of the similarity of these labels some of the old soldiers, whose eyes are not now as bright as they were in the sixties, might buy union blue label cigars when they intended to buy those of defendants. It is an prostitution of the spirit of patriotism to attempt to tangle the old soldiers up with a device so manifestly dishonest as that adopted by defendants. The motion to dissolve the restraining order will be overruled and the injunction made perpetual.